No. 88-487

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

CAROLINE ANN BROWN AND HARLEY LEROY
BROWN,

        Petitioners,

   -vs-

DISTRICT COURT OF THE SEVENTEENTH
JUDICIAL DISTRICT FOR THE STATE OF
MONTANA, IN AND FOR THE COUNTY OF
BLAINE, and THE HONORABLE LEONARD
LANGEN, a Judge thereof,

        Respondents.

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

      For Petitioner:

           Frisbee, Moore, Stufft & Olson; Jayne Mitchell, Cut
           Bank, Montana

      For Respondent:

           Hon. Marc Racicot, Attorney General, Helena, Montana
           Clay Smith, Solicitor, Attorney General's Office
           Donald Ranstrom, County Attorney, Chinook, Montana

Submitted on Briefs: Dec. 14, 1988
Decided: July 19, 1989

Filed:

_____
                 Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.


The United States Supreme Court in Rice, Director, Department of Alcoholic Beverage Control of California v. Rehner (hereafter Rice v. Rehner) (1983), 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961, decided that Congress, by enacting 18 U.S.C. § 1161, gave states the power to regulate within their borders the possession and sale of liquor by Indian persons in Indian country through the licensing provisions of the states. Our case here answers the further problem: whether such liquor regulation by the states includes the power to enforce state criminal statutes against Indian persons for violations of state law relating to the possession or the sale of liquor within Indian country. We hold here that under Rice v. Rehner, and the applicable federal statute, Montana can, and does, have the power to punish by criminal proceedings in its state courts violations of state liquor laws occurring within its borders by Indian persons in Indian country. Because of our holding, we deny the petition for a writ of supervisory control from this Court, and dismiss these proceedings.

In Rice v. Rehner, the pivotal case here, Rehner was a federally licensed Indian trader who operated a general store on the Pala Reservation in San Diego, California. The Pala Tribe had adopted a tribal ordinance permitting the sale of liquor on the reservation, providing that the sales conformed to state law. Rehner sought from the state an exemption from its law requiring a state license for retail sale of liquor for off-premises consumption. When she was refused an exemption, Rehner filed suit seeking a declaratory judgment that she was not required to obtain a license from the state

and an order directing that liquor wholesalers could sell to her without her state license. The federal district court granted the state's motion to dismiss, ruling that Rehner was required to have a state license under 18 U.S.C. § 1161. The Court of Appeals reversed the district court, holding that § 1161 did not confer jurisdiction on the states to require liquor licenses. (9th Cir. 1982), 678 F.2d 1340. On writ of certiorari, the United States Supreme Court, as above noted, reversed the Court of Appeals, holding that California may properly require Rehner to obtain a state license in order to sell liquor for off-premises consumption.

As noted by the dissent in Rice v. Rehner, the United States Supreme Court rested its conclusion on three propositions. 463 U.S. at 738 (Blackmun, J., dissenting). First, the Supreme Court asserted that "tradition simply has not recognized sovereign immunity or inherent authority in favor of liquor regulation by Indians." Second, the Supreme Court found a "historical tradition of concurrent state and federal jurisdiction over the use and distribution of alcoholic beverages in Indian country." Third, the Supreme Court concluded that Congress "authorized . . . state regulation over Indian liquor transactions" by enacting 18 U.S.C. § 1161.

The principal argument of the petitioners (hereafter Brown or Browns) is that Rice v. Rehner held only that the states could require Indians transacting liquor business on the reservation to purchase a state liquor license. They argue that Rice v. Rehner did not, however, and could not, confer on the state criminal jurisdiction over liquor offenses committed by Indians on the reservation, contending that criminal jurisdiction over Indians can only be conferred upon the states by Congress with the express consent of the

- 3 -

tribe. They argue that Montana has not been given such a grant of criminal jurisdiction.

The facts in this case parallel somewhat the facts in Rice v. Rehner. This action arises from an information filed in Blaine County District Court, charging Harley LeRoy Brown and Caroline Ann Brown with the felony offense of sale and possession of beer and wine without a license in violation of Montana's statute, § 16-6-301(1), MCA. Caroline Ann Brown is an enrolled member of the Fort Belknap Tribal Community of the Assiniboine and Gros Ventre Tribes. Harley LeRoy Brown is an Indian person residing on the Fort Belknap Reservation and is the husband of Caroline Ann Brown and the head of an Indian family. The Browns operate a small grocery store at Hays, Montana, selling groceries, as well as beer and wine. At the time of the alleged offense, they claim they had a valid tribal and federal license authorizing them to sell beer and wine. The District Court, however, noted that the Browns had not obtained from the tribe such a liquor license.

On January 6, 1988, the Blaine County Attorney caused a state search warrant to be issued from the Blaine County Justice Court. Law enforcement officials attempted to execute the Blaine County search warrant on the reservation; but were told by the chief tribal judge of the Fort Belknap Tribal Court that the search warrant was invalid because the state had no jurisdiction on the reservation. Apparently, the state officers then caused an action to be filed in Tribal Court charging the Browns with criminal violations of tribal ordinances relating to the sale and display of liquor on the reservation. Under the charges filed in the Tribal Court, a search warrant was issued from that Court under which evidence was seized from the grocery store at Hays, Montana; and transported to Blaine County District Court. The evidence was not taken to the Tribal Court and it is

contended that the tribal search warrant was not served upon Caroline Ann Brown, from whose possession the evidence was seized. Following the seizure and transport of the evidence, the Tribal Court action was dismissed. State court charges were filed against the Browns on February 4, 1988, after the Tribal Court action was dismissed.

On April 6, 1988, Browns moved to dismiss the charges against them on grounds that the Montana State District Court did not have criminal jurisdiction over Indians who allegedly committed crimes within the exterior boundaries of the reservation. The defendants further moved to quash the search warrant and suppress the evidence seized under the Tribal Court search warrant, which evidence had been transferred to the state court.

On August 6, 1988, the District Court denied both the motion to dismiss and the motion to quash. In denying the motion to dismiss, the District Court relied on Rice v. Rehner particularly. Thereupon, the petitioners filed their application for a writ of supervisory control or other appropriate writ from this Court to review the issue of jurisdiction, and the issue of whether the evidence should be suppressed.

Under Title 18 U.S.C. §§ 1154, 1156, 3113, and 3488, introduction of liquor, possession thereof, dispensing thereof or transporting the same is forbidden in Indian country. As noted in Rice v. Rehner, 463 U.S. 722, Congress imposed complete prohibition of liquor on Indian lands in Indian country in 1832 and "these prohibitions are still in effect subject to suspension, conditioned on compliance with state law and tribal ordinance." The United States Supreme Court derived that statement from the provisions of Title 18 U.S.C. § 1161, which follow:

- 5 -

> The provisions of 1154, 1156, 3113, 3488 and 3618 of this title shall not apply within any area that is not Indian country nor to any act or transaction within any area of Indian country provided such act <u>or transaction is in conformity both with the laws of the state in which such act or transaction occurs</u> and with an ordinance duly adopted by the tribe having jurisdiction over such area of Indian country . . . (Emphasis added.)

Plainly, under the language of § 1161, two things are necessary to remove the federal prohibition against liquor in Indian country: (1) conformity with the laws of the state in which the transaction occurs; and, (2) an ordinance duly adopted by the tribe having jurisdiction over the area of Indian country. In this case, the Fort Belknap Indian Community adopted its Tribal Ordinance No. 3-74 in 1974, which regulates liquor transactions on the reservation under the jurisdiction of the Fort Belknap Indian community "provided that such introduction, sale or possession is in conformity with the laws of the state of Montana."

The principal argument of Brown in this case is that <u>Rice v. Rehner</u> was a civil case, which only held that Indians transacting a liquor business on the reservation must purchase a state liquor license; and that it did not give state courts criminal jurisdiction over Indians who commit liquor offenses on the reservation. Brown contends that criminal jurisdiction over Indians can only be conferred upon the states by Congress by the express consent of the tribe. 18 U.S.C. § 1162. They contend that Montana has not been given such a grant of criminal jurisdiction.

Such an interpretation would be a narrow construction of 18 U.S.C. § 1161 and would overlook the specific reference in <u>Rice v. Rehner</u> that Congress has also historically permitted concurrent state regulation through the "imposition of criminal penalties on those who supply Indians with liquor,

or who introduce liquor into Indian country." 463 U.S. at 726. The interpretation ignores also the obvious determination in Rice v. Rehner that the state was entitled to effective regulation of liquor, the Supreme Court saying:

> The historical tradition of concurrent state and federal jurisdiction over the use and distribution of alcoholic beverages in Indian country is justified by the relevant state interests involved. See Confederated Tribes, supra, [447 U.S.] at 156, 65 L.Ed.2d 10, 100 S.Ct. 2069. Rehner's distribution of liquor has a significant impact beyond the limits of the Pala Reservation. The state has an unquestionable interest in liquor traffic that occurs within its borders, and this interest is independent of the authority conferred on the states by the Twenty-first Amendment. Crowley v. Christiansen, 137 U.S. 86, 91, (1890). Liquor sold by Rehner to other Pala tribal members or to nonmembers can easily find its way out of the reservation and into the hands of those whom, for whatever reason, the state does not wish to possess alcoholic beverages, or to possess them through a distribution network over which the state has no control. This particular "spillover" effect is qualitatively different from any "spillover" effects of income taxes or taxes on cigarettes. "A state's regulatory interest will be particularly substantial if the state can point to off-reservation effects that necessitate state intervention." New Mexico v. Mescalero Apache Tribe, 462 U.S. 234, 65 L.Ed.2d 611, 103 S.Ct. 2378 (1983).

Rice v. Rehner, 463 U.S. at 724.

In this case, the district judge particularly noted the "spillover" effect, remarking that the state's regulatory interest was substantial because the Brown grocery was located on Montana State Highway No. 66, a state-maintained, two-lane paved highway, carrying non-Indian traffic from Billings, Montana, to the south; to Harlem, Montana, to the north. Moreover, Rice v. Rehner recognized that "it cannot be doubted that the state's police power over liquor

transactions within its borders is broad enough to protect the same Congressional decision in favor of the state" [by allowing removal of the prohibition against liquor on reservations from transactions that conform both with the laws of the state and with a tribal ordinance]. 463 U.S. at 731.

The second principal argument made by Brown is that the Fort Belknap community has preempted the field by asserting exclusive jurisdiction over liquor offenses on the reservation. In support, they point to the criminal prosecution ordinances adopted by the tribe which provide procedures in the tribal courts for crimes committed on the reservation. They also point to Resolution No. 71-88, adopted by the tribal community on April 6, 1988, after the institution of the criminal action in this case. Resolution No. 71-88 declared in effect that its previously adopted ordinance allowing the use and sale of alcoholic beverages on the reservation did not cede or authorize jurisdiction within the reservation to the state of Montana.

For these contentions, the Browns rely on State of Wisconsin v. Big John (Wis. Ct. App. 1987), 409 N.W.2d 455; and upon the federal decisions in U.S. v. Cowboy (10th Cir. 1982), 694 F.2d 1228; U.S. v. Johnson (9th Cir. 1980), 637 F.2d 1224; and U.S. v. Allen (8th Cir. 1978), 574 F.2d 435.

State v. Big John, supra, has no application in this cause because it involved the state's attempt to regulate the use of boats in Wisconsin, an activity well within the traditional area of Indian tribal sovereignty. Rice v. Rehner specifically pointed out that the regulation of liquor on reservations was not within the inherent or historical tribal sovereignty. The federal cases likewise do not support Brown in this case. U.S. v. Allen, supra, involved

- 8 -

an assault by an Indian against other Indians on a reservation and has no connection with the interpretation of Indian liquor laws except that the parties were drinking when the assault occurred. U.S. v. Johnson, supra, held that offenses by an Indian against an Indian are subject to the jurisdiction of the Tribal Courts if not covered by the Major Crimes Act, in a case construing the federal Juvenile Delinquency Act. U.S. v. Cowboy, supra, held that the tribal courts had concurrent jurisdiction with the federal courts over Indians who offend 18 U.S.C. § 1154 (dispensing liquor). No state statutes were involved and the court there did not pass upon the application of state criminal laws under 18 U.S.C. § 1161.

The state district court in this case rejected the preemption argument pointing to the language in Rice v. Rehner, which said:

> . . . Our examination of § 1161 leads us to conclude that Congress authorized, rather than preempted state regulation over Indian liquor transactions.

463 U.S. at 726.

Again, the District Court noted from Rice v. Rehner:

> It is clear then that Congress viewed § 1161 as abolishing federal prohibition, and as legalizing Indian liquor transactions as long as those transactions conformed both with tribal ordinances and state law. It is also clear that Congress contemplated that its absolute, but not exclusive power, to regulate Indian liquor transactions would be delegated to the tribes themselves and to the states, which historically shared concurrent jurisdiction with the federal government in this same area . . .

463 U.S. at 728.

We agree with the District Court that preemption has not occurred here. In sum, we hold that when Congress decided to

allow the end of prohibition of liquor on reservations in certain cases, it did so under the conditions that state law and tribal ordinances would regulate liquor transactions in Indian country. If we were to interpret 18 U.S.C. § 1161 as permitting only state licensing of liquor transactions on Indian reservations, but not the power to enforce the same, the state would be powerless to effectuate the intent of Congress that such liquor transactions on reservations be "in conformity with state law."

Rice v. Rehner, supra, was decided by a divided court, but its majority holding clearly implies that state criminal laws relating to liquor transgressions apply to offenses committed by Indians in Indian country. We so hold.

With respect to the second portion of Browns' petition for writ in this cause asking us to direct the suppression of the evidence seized under the tribal search warrant, we find this issue to be premature because Browns have a clear remedy by appeal. The order denying suppression of the evidence is interlocutory and in such case a writ of supervisory control from this Court is not obtainable.

The application for writ of supervisory control is denied and these proceedings dismissed.

_____
John C. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

- 10 -

P. C. McDonough

William E Hunt Sr

_____
Justices